Edwin Reeves Hazel, III, #09030217 )
*former #05081607*, )
 )
      Plaintiff, )
 )
v. )    Civil Action No. 0:09-2405-SB
 )
Captain C. McElvogue, )    **ORDER**
Sgt. R. Sanders, )
 )
      Defendants. )
_____ )

This matter is before the Court upon the pro se Plaintiff's complaint, filed pursuant to 42 U.S.C. § 1983. The record contains the report and recommendation ("R&R") of United States Magistrate Judge Paige J. Gossett, which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(d). In the R&R, Magistrate Judge Gossett recommends that the Court grant the Defendants' motion for summary judgment and deny all of the Plaintiff's motions. After being granted an extension of time, the Plaintiff filed written objections to the R&R, and the matter is ripe for review.

## BACKGROUND

Plaintiff Edwin Reeves Hazel, III ("Hazel" or "the Plaintiff") filed this action on September 14, 2009, naming as Defendants Captain Cliff McElvogue ("McElvogue"), the director of the Berkeley County Detention Center ("BCDC"), and Sergeant Rosemary Sanders ("Sanders"), an officer at the BCDC. At the time relevant to this action, Hazel was a pre-trial detainee at the BCDC, where he was housed in protective custody ("A-Pod Segregation") upon his request.

In his complaint, the Plaintiff asserts that he has been denied the right to purchase

pencils, envelopes, and paper to write letters to his attorneys. He states that he is not on disciplinary segregation and that he deserves "the same rights and privileges as regular population, as far as access to the courts." (Entry 1 at 3.) He states that he has had another "hold" placed on him for failure to appear since he has been denied access to the courts and his attorney. In his prayer for relief, the Plaintiff asks the Court to force the BCDC to add stationery and writing supplies to the A-Pod Canteen, to force the BCDC to change its policies, and to award him $85,000.00 in punitive damages.

After filing his complaint, the Plaintiff filed several motions to appoint counsel, which the Magistrate Judge denied, as well as numerous motions to amend his complaint, a motion for a restraining order against the Defendants, a motion for judgment on the pleadings, and motions to prosecute the Defendants for perjury. The Defendants filed responses opposing the Plaintiff's motions as well as a motion for summary judgment. In their motion for summary judgment, the Defendants argue that: (1) the Eleventh Amendment bars the suit against them in their official capacity; (2) Hazel is barred from bringing claims on the behalf of other inmates; (3) Hazel has not shown any actual injury; (4) the Defendants are entitled to qualified immunity; and (5) section 1983 liability cannot be premised on respondeat superior. Attached to their motion for summary judgment, the Defendants included their affidavits, the Plaintiff's charge sheet, the Plaintiff's request for protective custody, a copy of the administrative segregation policy, and the Plaintiff's inmate account summary.

After a review of the case, the Magistrate Judge issued an R&R addressing the pending motions and recommending that the Court grant the Defendants' motion for summary judgment and deny the Plaintiff's myriad motions.

2

## STANDARD OF REVIEW

### I. The Magistrate Judge's R&R

The Court is charged with conducting a de novo review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636(b)(1). Any written objection must specifically identify the portion of the R&R to which the objection is made and the basis for the objection. Id.

### II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the Court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The Court is not to weigh the evidence but rather must determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." Id. at 327.



## DISCUSSION

As an initial matter, it does not appear that the Plaintiff has specifically objected to the Magistrate Judge's recommendation that the Court deny all of his motions. In any event, the Court has undertaken a thorough review of the record and agrees with the Magistrate Judge that the Plaintiff is not entitled to a default judgment or a restraining order against the Defendants, or a judgment on the pleadings. In addition, the Court agrees with the Magistrate Judge that the Plaintiff has no right to institute criminal proceedings against the Defendants. After review, therefore, the Court denies the Plaintiff's motion for default judgment (Entry 18), the Plaintiff's motion for a restraining order (Entry 38), the Plaintiff's motion for judgment on the pleadings (Entry 54), and the Plaintiff's motions to prosecute the Defendants (Entries 50 and 55).

Next, in his objections to the R&R, the Plaintiff states that he is not seeking relief on behalf of others and that he is not suing the Defendants in their official capacities, but in their individual capacities. He also asserts that the Court should not grant summary judgment because there is a genuine issue of material fact and the case should go to trial. Lastly, he states that the Defendants have not provided him with a law library or any person trained in the law to provide assistance.

As previously mentioned, in this suit the Plaintiff claims that he is being denied the right to purchase pencils, envelopes, and paper, and that as a result of this denial, he is being denied access to the courts. The Plaintiff claims that a "hold" was placed on him for failure to appear because he could not contact his attorney.

Here, the Court agrees with the Magistrate Judge that there is no independent constitutional right to purchase pencils, envelopes, and paper. What there is a right to,

4

however, is meaningful access to the courts. Indeed, as the Magistrate Judge noted, it is well-settled that prisoners have a "fundamental constitutional right of access to the courts," and prison authorities must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828. However, as the Court clarified in Lewis v. Casey:

> Because Bounds did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. . . . **Insofar as the right vindicated by Bounds is concerned, "meaningful access to the courts is the touchstone," and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim. . . .**
>
> Although Bounds itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which Bounds relied. Moreover, the assumption of actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts.

518 U.S. 343, 351-52 (1996) (internal citations omitted) (emphasis added); see also Strickler v. Waters, 989 F.2d 1375, 1385 (4th Cir. 1993) (quoting the dissent in DeMallory v. Cullen, 855 F.2d 442, 452 (7th Cir. 1988)) ("A demonstration of inability to present a legal claim is an essential ingredient of a suit such as this one because the prisoner must be able to show that the rules interfered with his entitlement (access to the courts) rather than with a mere instrument for vindicating an entitlement (access to books)."); Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ("In addition, courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of

5

access to the courts will be sustained.").

After a thorough review of the record, the Court agrees with the Magistrate Judge that the Plaintiff has failed to demonstrate that he has been denied access to the courts or that he has suffered any actual injury as a result of any alleged denial of access to the courts. First, with respect to the Plaintiff's claim that a "hold" was placed on him for failure to appear in court on a separate charge, the Court notes that Hazel was already in custody when he failed to appear in court on another charge, and it does not appear that the "hold" prejudiced his defense or amounted to any more than a delay and some inconvenience. Next, with respect to the Plaintiff's claim that the Defendants provide sporadic letter writing opportunities (rather than *weekly* letter writing opportunities as Defendant Sanders alleged in her affidavit), it does not appear that the somewhat sporadic nature of the letter writing opportunities caused any actual injury to the Plaintiff. In fact, a review of the Plaintiff's Account Summary indicates that he mailed almost 100 letters between March of 2009 and January of 2010.[1] Also of particular significance is the fact that the Plaintiff has filed at least sixteen motions in this case as well as four other civil actions within the past year. Such extensive filings are inconsistent with the notion that Hazel has been denied access to the courts. In summary, the Plaintiff has failed to demonstrate that any alleged shortcomings in the legal assistance or letter writing program have hindered his efforts to pursue a legal claim, and therefore, the Court agrees with the Magistrate Judge that the Plaintiff has not shown that he has been denied access to the courts or that he has



---

[1] It appears that the Plaintiff participated in letter writing on 3/12/09; 3/23/09; 4/3/09; 4/15/09; 4/24/09; 5/4/09; 5/18/09; 5/29/09; 6/4/09; 6/15/09; 6/26/09; 7/6/09; 7/17/09; 7/23/09; 8/3/09; 8/17/09; 8/26/09; 9/4/09; 9/13/09; 9/25/09; 9/28/09; 10/6/09; 10/12/09; 10/19/09; 10/26/09; 11/5/09; 11/13/09; 12/4/09; 12/11/09; 12/16/09; 12/23/09; and 1/11/10.

suffered any actual injury.

Finally, with respect to the Plaintiff's objection that he has not been given access to a law library or a person trained in the law – a claim that he raises for the first time in his objections – the Court again notes that there is no "abstract, freestanding right to a law library or legal assistance, [so] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." Lewis, 518 U.S. at 351. Stated simply, "[t]his post hoc claim, which is not only conclusory, but speculative, is likewise insufficient to show the actual injury required to survive summary judgment." Strickler, 989 F.2d at 1383 (rejecting an inmate's claim that his suit's dismissal "may have been avoidable if a library was available"). Again, because the Plaintiff does not allege any particular injury caused by the alleged shortcomings, his post hoc claim suffers from the same defect as his original claim.

## CONCLUSION

Based on the foregoing, it is therefore

**ORDERED** that the R&R (Entry 63) is adopted; the Plaintiff's motion for default judgment (Entry 18) is denied; the Plaintiff's motion for a restraining order (Entry 38) is denied; the Plaintiff's motion for judgment on the pleadings (Entry 54) is denied; the Plaintiff's motions to prosecute the Defendants (Entries 50 and 55) are denied; and the Defendants' motion for summary judgment (Entry 43) is granted. .

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

June 14, 2010
Charleston, South Carolina

7